UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RICHARD HODGES, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. H-08-962 |
| § | |
| ISP TECHNOLOGIES INC, § | |
| § | |
| Defendant. § | |

**OPINION AND ORDER**

Pending before the Court are Defendant ISP Technologies, Inc.'s ("ISP") motions for summary judgment (Docs. 17, 22), as well as Plaintiff Richard D. Hodges's ("Hodges") responses (Docs. 19, 23–24) and ISP's replies (Docs. 21, 25). Upon review of these motions, the responses and replies thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Defendant's motion for summary judgment (Doc. 17) should be granted.

I. Background and Relevant Facts

This is an employment discrimination case. In 1994, Hodges was injured in an industrial accident resulting in post-traumatic stress disorder ("PTSD") and lasting physical impairments. (Doc. 19-8 at 44:15–16, 97:19–23.) In 1996, two years after the accident, Hodges's personal physician, Dr. Michael J. Grecula ("Grecula") determined that Hodges was near maximal medical improvement ("MMI") and assessed his impairment ("MMI rating") at 34% of whole body impairment. (Doc. 19-5, Exh. 5 at 5.) Grecula reported that Hodges has a limited range of motion in his left elbow and wrist, as well as reduced grip strength in his right hand. (*Id.*) Since 1997, Hodges has not required job accommodations. (Doc. 19-8 at 45:18–21.)

Until 2002, Hodges worked at Valero Energy Corporation as a maintenance planner and

electrical technician. (Doc. 1 at 3; Doc. 19-8 at 44:16–18.) From 2002 until 2004, Hodges worked at the University of Texas Medical Branch as a utilities electrician. (Doc. 1 at 3.) From 2004 to 2005, Hodges was a maintenance supervisor with the Texas Department of Criminal Justice. (*Id.*) In 2005, Hodges worked for MEMC Electronic Materials Corp. ("MEMC") as a production technician operator. (Doc. 1 at 3; Doc. 19-8 at 42:23.)

In 2006, Hodges left his job at MEMC to work for ISP. (*Id.* at 61:22–62:3.) Hodges passed ISP's pre-employment physical and, on August 21, 2006, began orientation for his job as a production technician. (Doc. 1 at ¶ 9; Doc. 19-8 at 10:22–23, 20:9–10.) At orientation, Hodges submitted paperwork informing ISP that he had a disability. (Doc. 19-8 at 11:24–12:8.) In conversation with an assistant in the human resources office, Hodges explained that he was 34% disabled based on his MMI rating, but that his impairment had never caused him problems at previous jobs. (*Id.* at 12:3–5, 12:20–13:1.)

Hodges worked for ISP for fifteen days from August 21 through September 5, 2006. (Doc. 1 at 2.) Hodges's job requirements involved walking, bending, reaching and climbing to perform basic duties; bending and stooping while checking pumps, valves, and motors; moving pallets of drums with a hand truck; filling, shoving, and sealing drums of copolymer and solvents up to 550 pounds each; maneuvering and rolling the 550-pound drums; climbing on and off a tow motor; and climbing storage tanks and a tank wagon loading rack. (Doc. 22, Exh. B.) Hodges also had to hold and twist plastic bags when filling the drums with powder. (Doc. 19-12 at 5:20–6:5.)

In his first week at ISP, Hodges noticed difficulty performing the duties of a production technician. (*Id.*) Hodges experienced difficulty with the repetitive motions at the filling and lidding stations in the drum assembly room. (Doc. 1 at ¶ 9, Doc. 19-12 at 5:14–17.) The

repetitive motion put strain on Hodges's arm tendons causing pain. (Doc. 1 at ¶ 9; Doc. 19-12 at 5:12.) Hodges says he successfully performed his job, though he could "not do the job without discomfort." (Doc. 19-8 at 21:13; Doc. 1 at 9.)

Hodges reported these difficulties to the foreman, Eloi Huerta ("Huerta"). (Doc. 19-8 at 15:24–16:9.) Hodges was concerned his difficulties might impact an upcoming thirty-day job evaluation. (*Id.* at 16:9–13.) Huerta reassured Hodges that he was doing a good job and was not a slow or weak link. (*Id.* at 16:16–18.) Hodges tried using a stool to elevate himself in order to change the ergonomics of his motions. (*Id.* at 20:13–22.) Nevertheless, Hodges did not ask for any work assistance or accommodations at that time. (*Id.* at 16:20–22.)

On September 5, 2006, Huerta recommended that Hodges discuss his difficulties with the union representative, Ben Maly ("Maly"). (*Id.* at 17:12–18.) Hodges told Maly about his discomfort. (*Id.* at 17:23–24.) Hodges also met with Brian Johnson ("Johnson"), a maintenance manager, and Michael Mervyn ("Mervyn"), a safety engineer. (*Id.* at 19:4–8; Doc. 19-12 at 4:12–18, 6:25–7:2.) Hodges explained that his job caused discomfort, annoyance, and sometimes pain. (Doc. 19-8 at 21:23–22:1.) Hodges did not think he could do his job without pain, but told Johnson that he could continue doing the job for the foreseeable future. (*Id.* at 22:15–17, 22:24–23:1.)

Huerta told Hodges about an opening for a different position, as a generalist. A generalist is an entry-level position in the maintenance department that requires basic skills in mechanics, painting, insulation, and carpentry. (Doc. 22, Exh. A.) The physical requirements of a generalist include: walking, bending, reaching, and climbing; moving pallets of drums with a hand truck; the ability to lift 100 pounds; filling, shoving, and sealing drums of up to 550 pounds each; and maneuvering and rolling drums of up to 550 pounds. (*Id.*) Huerta thought the job was

a better fit for Hodges. (Doc. 19-8 at 48:14–18.)

Hodges states he never had an opportunity to formally apply for the generalist position. (*Id.* at 49:17–18.) The generalist position is a union job subject to the rules of a collective bargaining agreement between ISP and the Metal Trades Council of the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO"). (*Id.* at 55:2–57:24.) Hiring protocol requires that ISP post a job listing open only to AFL-CIO members for ten days. (Doc. 19-3 at 22:19–23:17.) If no union member inquires about the job, after ten days ISP could open the position to people outside the AFL-CIO bargaining unit. (*Id.*) Hodges was not a member of AFL-CIO, though he was a member of the International Brotherhood of Electrical Workers ("IBEW"). (Doc. 19-8 at 54:13–15.) Hodges would be eligible for membership with the AFL-CIO only after completing a thirty-day probationary period. (*Id.* at 54:25–55:1.) Although Huerta indicated that there was a generalist vacancy, ISP decided not to fill the vacancy once the ten-day period expired. (Doc. 19-3 at 22:5–7; Doc. 19-12 at 9:7.)

Later on September 5, 2006, Hodges again met with Johnson and Stacie Baccinelli ("Baccinelli"), the human resources supervisor. (Doc. 19-8 at 49:23–50:4.) Johnson told Hodges that, after reviewing the generalist job description, Hodges was not a viable candidate because the position required the same repetitive motions as a production technician. (Doc. 19-12 at 11:5–16.) Hodges told Johnson, "I understand if you don't have another spot for me and I'll just go on down the road." (*Id.* at 15:13–18.) Johnson's impression was that Hodges had quit and "left the premises on his own accord." (*Id.* at 14:4–7.) "[Hodges] recognized that we didn't have a position that he could work in without causing pain to himself. And he quit." (*Id.* at 14:10–12.) To Hodges, "it seemed very apparent" that he was being fired. (Doc. 19-8 at 64:23–65:6.) Hodges testified he had no desire to end his employment with ISP. (*Id.* at 69:10–

11.)

Baccinelli never contacted Hodges after September 5, 2006. (Doc. 19-3 at 26:24–27:8.) Hodges did not sign any termination papers or participate in an exit interview. (*Id.*) On November 28, 2006, Hodges obtained a job with Plains Pipeline. (Doc. 19-8 at 33:4–14.) On April 9, 2007, Hodges returned to work for MEMC. (*Id.* at 37:9–10.)

On March 27, 2008, Hodges filed the instant suit complaining of disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12111 *et. seq.* (Doc. 1.) ISP moves for summary judgment pursuant to Fed. R. Civ. P. 56(c) asserting that Hodges does not qualify as an individual with a disability under the ADA and that ISP was not obligated to provide reasonable accommodation for Hodges's impairments. (Doc. 17; Doc. 22 at 1.)

II. Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the movant fails to meet its initial burden, the motion must be denied, irrespective of

the adequacy of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in its favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor" (emphasis in original)).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also*, *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert.*

*denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).

The nonmovant cannot discharge its burden by offering vague allegations and legal conclusions. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also*, *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). The party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

III. <u>Discussion</u>

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'"

*Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 476 (5th Cir. 2006) (quoting 42 U.S.C. § 12112(a)). A *prima facie* case of disability discrimination under the ADA requires that the plaintiff: (1) is disabled as defined by the ADA; (2) is qualified for the job; and (3) suffered an adverse employment decision because of that disability. *See Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999); *Robertson v. The Neuromedical Ctr.*, 161 F.3d 292, 294 (5th Cir. 1998).

If the plaintiff makes a *prima facie* showing, the employer must articulate a legitimate, nondiscriminatory reason for its actions. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998); *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003); *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003). "Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." *Gowesky*, 321 F.3d at 511; *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000).

"As a threshold requirement in an ADA claim, the plaintiff must . . . establish that he has a disability." *Roger's v. Int'l Marine Terminals*, 87 F.3d 755, 758 (5th Cir. 1996). "[W]hether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999); *see Bragdon v. Abbott*, 524 U.S. 624, 641–42 (1998). The ADA defines a disability as: (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2).

A disability is "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg.,*

*Ky., Inc., v. Williams*, 534 U.S. 184, 198 (2002). "Merely having an impairment does not make one disabled for the purposes of the ADA." *Id.* at 194. The impairment must have an impact that is "permanent or long term." *Id.*; *see also Hinojosa v. Jostens Inc.*, 128 F. App'x 364, 368 (5th Cir. 2005). "The term 'disability' does not include temporary medical conditions, even if those conditions require extended leaves of absence from work." *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir. 1997) (internal citations omitted). Further, the plaintiff "must prove that he was disabled at the time of the alleged discriminatory act." *Lottinger v. Shell Oil Co.*, 143 F. Supp. 2d 743, 761 (S.D. Tex. 2001).

The impairment creating the disability must substantially limit major life activities. 42 U.S.C. § 12102(2). "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995) (quoting 29 C.F.R. § 1630.2(i)). "Other major life activities could include lifting, reaching, sitting, or standing." *Id.* at 726 n.7. A plaintiff must "show that the limitation on the major life activity is substantial." *Hinojosa*, 128 F. App'x at 366. "The central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives," rather than on "the impairment's effect in the workplace." *Toyota,* 534 U.S. at 185.

Hodges asserts that he suffers from a permanent disability that requires accommodation to perform repetitive movements at his job. (Doc. 1 at ¶ 12.) However, Hodges characterized his impairment on the job as "just annoying and uncomfortable." (Doc. 19-8 at 21:25–22:1.) It is undisputed that Hodges was injured in an industrial accident, which impaired his ability to make repetitive movements over long periods of time. Hodges does not claim that the impairments impacted daily life activities outside of his job with ISP.

Even if a plaintiff is not substantially limited with respect to a specific activity like walking or speaking, he may be limited in the major life activity of working. *Dutcher*, 53 F.3d at 726 & n.10; 29 C.F.R. § 1630.2(i). An individual is substantially limited in the major life activity of working if he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Dutcher*, 53 F.3d at 727 (citing 29 C.F.R. § 1630.2(j)(3)(i)). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Dupre*, 242 F.3d at 614 (citing 29 C.F.R. § 1630.3(j)(3)(i)).

"If an individual is not severely restricted from engaging in activities central to daily life, courts have found that limits on lifting, bending, pulling, and pushing do not prevent or severely restrict that individual from major life activities." *Carmouche v. MEMC Pasadena, Inc.*, Civ. No. 06-2074, 2008 WL 2838474, at *8 (S.D. Tex. July 21, 2008); *see Ray v. Glidden*, 85 F.3d 227, 229 (5th Cir. 1996) (holding that a ten-pound lifting restriction is not a substantial limitation of a major life activity); *Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 37 & n.2 (5th Cir. 1996) (quoting *Rogers*, 87 F.3d 755, 758 n.2) (restriction on climbing stairs did not substantially limit a major life activity); *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 614 (5th Cir. 2001) (a plaintiff who could sit or stand for up to one hour at a time was "not significantly restricted as compared with the average person").

As a production technician, Hodges was required to climb and bend to check valves, move pallets, and fill and maneuver 550-pound drums. (Doc. 22, Exh. B.) Hodges had difficulty with repetitive motions at the filling and lidding stations in the drum assembly room. (Doc. 1 at ¶ 9; Doc. 19-12 at 5:14–17.) Some of the twisting motions caused Hodges discomfort. (Doc. 19-8 at 21:25–22:1.) Despite his impairment, Hodges had worked in jobs similar to that of

a production technician. Hodges was a production technician operator at MEMC, a shift electrician at UTMB, and a maintenance planner and instrument electrician at Valero. (*Id*. at 42:20–44:22.) After his employment at ISP ended, Hodges worked for Plains Pipeline as an instrument technician and for IBEW Local 527 as a journeyman and electrical technician. (*Id.* at 33:4–9, 36:9–17.) Hodges now works at MEMC Pasadena in a position similar to his position at ISP. (*Id.* at 8:23–24; 30:12–15.) At MEMC, Hodges's duties include loading and unloading hoppers and drums, operating forklifts and cranes, turning valves, climbing ladders, lifting, stooping, bending, and standing. (*Id.* at 30:12–20.) Hodges does not currently use any special assistive devices to help him perform his job. (*Id.* at 31:17–32:1.) Because Hodges is not substantially limited from working jobs similar to that of a production technician or a generalist, he is not disabled under this prong of the ADA.

"The second prong of the ADA entitles a plaintiff to protection if he or she can show that both: (1) the plaintiff has a record or history of impairment; and (2) the impairment substantially limits a major life activity." *Blanks v. Sw. Bell Commc'ns, Inc.*, 310 F.3d 398, 402 (5th Cir. 2002) (citing *Dupre*, 242 F.3d at 615). Protecting people with only a record of impairment "ensure[s] that people are not discriminated against because of a history of disability." 29 C.F.R. Pt. 1630, App., § 1603.2(k). "Although an individual may show that he or she has a record of impairment, if he or she fails to show that the impairment is substantially limiting, the individual may not qualify as disabled under this prong." *Blanks*, 310 F.3d at 402.

Hodges has a history of an impairment, but cannot show that his impairment substantially limited his ability to work a broad range of jobs. Hodges states that at one time he wanted to serve on an "emergency crew," but did not qualify because of his limitations. (Doc. 19-1 at 3.) However, Hodges was able to work as an electrician. Hodges does not show that he was ever

unable to perform a broad range of jobs or was so classified. *See EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 655 (5th Cir. 1999); 28 C.F.R. § 41.31(b)(3). Since 1997, Hodges has not received nor required accommodations to perform jobs similar to that of a production technician or generalist. (Doc. 19-8 at 45:18–21; 31:17–32:1.) Hodges therefore fails to establish a record of disability.

Finally, a person may qualify for protection under the ADA by establishing that their employer "regarded" them as disabled. *Blanks*, 310 F.3d at 402. A person is "regarded as" disabled if he: "(1) has an impairment which is not substantially limiting but which the employer perceives as . . . substantially limiting . . . ; (2) has an impairment which is substantially limiting only because of the attitudes of others towards such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment." *Rodriguez*, 436 F.3d at 475; *see* 29 C.F.R. pt. 1630, App. § 1630.2(l) (stating that the purpose of the "regarded as" prong is to include people "rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities.")

A *prima facie* showing of disability discrimination under the "regarded as" prong requires the plaintiff to "produce sufficient evidence for a reasonable trier of fact to conclude that the employer perceived him, however erroneously, as having an impairment that substantially limited one or more of his major life activities." *Bennett v. Calabrian Chems. Corp.*, 324 F. Supp. 2d 815, 833 (E.D. Tex. 2004); *See Blanks*, 310 F.3d at 402; *Dupre*, 242 F.3d at 616; *Hamilton v. Sw. Bell Telephone Co.*, 136 F.3d 1047, 1051–52 (5th Cir. 1998); *Pryor*, 138 F.3d at 1028; *Sherrod*, 132 F.3d at 1121. "If the employer excludes the impaired employee from a broad range of jobs, the employee is 'regarded as' disabled under the ADA." *Bridges*, 92 F.3d 329, 332 (5th Cir. 1996); *Blanks*, 310 F.3d at 402. The employee must demonstrate that the employer

"believed that he was 'unable to work in a *broad class of jobs*.'" *Rodriguez*, 436 F.3d at 476 (quoting *Sutton*, 527 U.S at 491 (emphasis in original)). "If the employee is merely excluded from a narrow range of jobs, then he or she is not 'regarded as' disabled under this prong." *Bridges*, 92 F.3d at 332; *Blanks*, 310 F.3d at 402. It is not enough to show that an employer believes the plaintiff cannot perform one particular job. *Mason v. United Air Lines, Inc.*, 74 F.3d 314, 317 (5th Cir. 2001) (holding that employer, who determined that plaintiff's limitations prevented him from performing only his job and not other jobs with different requirements, did not regard plaintiff as disabled).

Hodges shows that ISP regarded him as unable to perform two jobs: the generalist and production technician positions. While Hodges alleges that ISP regarded him as having impairments that substantially limited his ability to work, he fails to show that his impairments affected more then his ability to handle 550-pound chemical drums without discomfort. ISP therefore did not regard Hodges's impairment as limiting him from a broad class of jobs.

IV. Conclusion

Accordingly, the Court hereby ORDERS that Defendant ISP Technologies, Inc.'s motion for summary judgment (Doc. 17) is GRANTED.

SIGNED at Houston, Texas, this 10th day of August, 2010.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE